**POINT LANDING, INC., Plaintiff,**

**v.**

**The STEEL DECK BARGE DRTC 201, Her Equipment, Tackle, Apparel, Etc., in rem and Desplaines River Transport Corporation, in personam, Defendants.**

**Civ. A. No. 67–1068.**

United States District Court
E. D. Louisiana,
New Orleans Division.

Aug. 29, 1969.

 

John Poitevent, New Orleans, La., for plaintiff.

Charles E. Lugenbuhl, New Orleans, La., for defendants.

RUBIN, District Judge:

Point Landing, Inc., a barge fleeting and servicing corporation, brought this suit in rem against the Steel Deck Hopper Barge DRTC 201, alleging a maritime lien of $250.00 against the barge, and in personam against Desplaines River Transport Corporation, alleging unpaid fleeting, towing, cleaning, rigging and miscellaneous charges totaling $9,769.76. East Broadway Corporation, as owner, claimed the Barge DRTC 201, and prayed to defend accordingly. No service was effected upon Desplaines.

The parties stipulated:

The Barge DRTC 201 was bareboat chartered on January 13, 1966 by East Broadway Corporation, owner, to Desplaines River Transport Corporation and Leslie A. Kiltz, all as shown in claimant's Exhibit A, the authenticity of which is stipulated. Pursuant to Paragraph 6 of said agreement, charterer was denied the right to permit liens against said vessel and was obligated to keep a copy of said charter with the barge's papers and exhibit same to all persons, etc. having business with the barge which might give rise to a maritime lien or claim. During the period from January, 1967 through July, 1967, Point Landing, Inc. alleges that it furnished services to said barge which total $250.00. In addition, Point Landing alleges that it has unpaid invoices for other services rendered to other DRTC barges, all of which total $9,769.76, which is denied by East Broadway Corporation for lack of sufficient information to justify a belief.

The court finds:

1. Mr. Leslie H. Kiltz, President of Desplaines, which was the "charterer" of Barge 201, contacted Point Landing in 1966 and made arrangements for fleeting and other services to steel deck hop-

per barges for the account of Desplaines. It was understood that many of these barges were named "DRTC" followed by a number.

2. During the period from January, 1967 through June, 1967, Point Landing furnished maritime services to 23 different barges, 11 of which were named "DRTC" followed by a number.

3. Mr. Kiltz from time to time spoke to Mr. Donald William Wood, Vice-President of Point Landing. Point Landing was engaged in rendering similar services to other DRTC barges and Desplaines did not pay its accounts regularly. Therefore, Point Landing telephoned and wrote Desplaines from time to time. Nonetheless, Mr. Wood never asked whether Desplaines owned the barge or had it under charter. He did look at the barge and observed that it carried the marking DRTC 201 on the stern, but he did not examine the Bureau of Customs Monthly Supplement of the United States, which showed the true ownership of the barge, nor did he make any effort to find out whether Desplaines was the owner. Mr. Wood testified that, before furnishing services to the barge, he made no inquiry of anyone as to its ownership. After the services were rendered, Mr. Wood did inspect the barge for documents, and found none aboard. Neither did he find at that time any indication of the "homeport" or official number.

## CONCLUSIONS OF LAW

■ Pretermitting the question of whether the sevices performed or furnished by plaintiff were "necessaries" within the meaning of the Federal Lien Act, 46 U.S.C.A. § 971 et seq., the law is well settled that a person furnishing necessaries is always charged with notice of a charter's existence. See United States v. Carver, 1923, 260 U.S. 482, 43 S.Ct. 181, 67 L.Ed. 361; Dampskibsselskabet Dannebrog v. Signal Oil & Gas Co., 1940, 310 U.S. 268, 60 S.Ct. 937, 84 L.Ed. 1197; Gilmore & Black, Admiralty, Maritime Liens and Ship Mortgages, §§ 9–30 et seq., particularly § 946, pages 566 and 567 (1957). The person furnishing the necessaries and claiming the lien is charged with notice of a charter's existence unless he did, in fact, use reasonable diligence to ascertain the true facts but found out nothing. As set forth in Gilmore & Black, *supra*, it is not reasonable diligence "merely to ask the person who appears to be in possession." But in this case not even that inquiry was made, and Point Landing relied on an assumption of ownership without making any effort to investigate the facts.

■ The statute "places an affirmative duty on the supplier to inquire and investigate as to the existence of a charter and its terms." The leading authority is United States v. Carver, 1923, 260 U.S. 482, 489, 43 S.Ct. 181, 182, 67 L.Ed. 361, in which Mr. Justice Holmes said:

"We regard these words (of section 973) as too plain for argument. They do not allow the materialman to rest upon presumptions until he is put upon inquiry, they call upon him to inquire. To ascertain is to find out by investigation. If by investigation with reasonable diligence the materialman could have found out that the vessel was under charter, he was chargeable with notice that there was a charter; if in the same way he could have found out its terms he was chargeable with notice of its terms."

"The *Carver* case has been interpreted by Gilmore & Black, Admiralty, 566 (1957) as holding, that 'the materialman is always charged with notice of the contents of a charter (unless, hypothetically, he can show that even by inquiry he could not have found out about it) even though there is nothing to call his attention to the fact of the charter's existence and he may reasonably suppose that he is dealing with the owner.' The net result is that suppliers must always make inquiry, 'whether or not they know facts which would lead them to think that the vessel was not owned by the company operating it.'

Thus, the mere similarity of the crews and schedules and the retention of the name of the vessel would not in themselves relieve Belcher Oil from the duty to inquire." Bimini Run, Ltd. v. Belcher Oil Company, 5 Cir. 1964, 336 F.2d 184.

■ In the pre-trial order submitted to the court reference is made to the possible applicability of the State of Louisiana statutes regarding privileges. This proposition can be quickly rejected in view of the express language of the Federal Maritime Lien Statute providing, in 46 U.S.C. § 975, that the federal statute shall "supercede the provisions of all State statutes conferring liens on vessels." Clearly, Point Landing's rights in this action must depend upon the federal statute.

■ Point Landing did not use reasonable diligence. Judgment will therefore be entered by the Clerk dismissing its demand at its cost.